UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS SMITH, MD and HOBERT SMITH, MD, ) ) ) Plaintiffs, ) ) v. ) ) CALIFORNIA DEPARTMENT OF ) CORRECTION, JERRY NEGRETTE, ) STEVE WILLIAMS, and DOES I through ) CC, inclusive, ) ) Defendants. ) _____ ) | CIV-F-06-0368 AWI SMS ORDER RE: MOTION TO DISMISS |

This case is before the court on Defendants' motion to dismiss under Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6). Plaintiffs oppose the motion. The matter was taken under submission without oral argument.

**I. History**

Plaintiffs Dennis Smith and Hobert Smith are doctors who work at Avenal State Prison

treating prisoners. Defendants Jerry Negrete[1] and Steve Williams are employees of the California Department of Corrections. On July 22, 2005, Jerry Negrete and Steve Williams sent a letter to Plaintiffs advising them "they were the subject of criminal investigations concerning [their] billing practices for the provision of health care services pursuant to [their] employment contracts with CDC." Doc. 16, Amended Complaint, at 2:11-14. Plaintiffs allege that this letter was sent to "dissua[de] them and dete[r] them from providing professional health care services to inmates of CDC after regular business hours, notwithstanding their determination that such services were medically necessary...dissua[de] them and dete[r] them from demanding compensation for all health care services rendered by them after regular business hours to inmates of CDC." Doc. 16, Amended Complaint, at 2:28-3:5.

On April 4, 2006, Plaintiffs filed their initial complaint in this suit against Defendants Jerry Negrete, Steve Williams, and the California Department of Corrections. That document sought relief under 42 U.S.C. §1983 for impairment of contract (Article 1 Section 10) and taking without just compensation (Fifth Amendment). Doc. 1, Original Complaint, at 3:5-8. In addition, Plaintiffs alleged several state causes of action. On August 29, 2006 (before Defendants filed an answer), Plaintiffs filed their amended complaint, the operative complaint. In that document, Plaintiffs seek relief under 42 U.S.C. §1983, alleging that Defendants, acting in their individual capacities under color of law, have deprived them of a property right without due process (Fifth and Fourteenth Amendments) and without just compensation (Fifth Amendment). Doc. 16, Amended Complaint, at 2:18-21. Plaintiffs make no claim with respect to impairment of contract (Article 1 Section 10) or state causes of action. Defendants filed a motion to dismiss the suit under California Code of Civil Procedure §425.16 (the Anti-SLAPP Statute). The motion was denied as the Anti-SLAPP procedures can not be applied to federal causes of action. Doc. 26, December 6, 2006 Order. Defendants then filed this motion to dismiss alleging that (1) the court lacked subject matter jurisdiction due to Eleventh Amendment immunity and that (2)

---

[1] The parties have spelled Jerry Negrete's name as both Negrete and Negrette. The court will follow Defendants' spelling of Negrete.

Plaintiffs failed to state a claim as the contract benefits sued upon are not constitutionally protected property interests.

## II. Legal Standards

**A. Fed. R. Civ. Proc. 12(b)(1)**

Rule 12(b)(1) allows for a motion to dismiss based on lack of subject matter jurisdiction. It is a fundamental precept that federal courts are courts of limited jurisdiction. Vacek v. UPS, 447 F.3d 1248, 1250 (9th Cir. 2006). Limits upon federal jurisdiction must not be disregarded or evaded. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). The plaintiff has the burden to establish that subject matter jurisdiction is proper. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). A Rule 12(b)(1) motion may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

When a defendant makes a factual challenge "by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). The court need not presume the truthfulness of the plaintiff's allegations under a factual attack. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). Where the jurisdictional issue and the merits of the case are not factually completely intermeshed or intertwined, the court may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, including resolving factual disputes when necessary. St. Clair v. Chico, 880 F.2d 199, 201-02 (9th Cir. 1989). Jurisdiction and the merits of a case are intertwined when the same statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief or when the question of jurisdiction is dependent on decision of the merits. See Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039-40 (9th Cir. 2004); St. Clair v. Chico, 880 F.2d 199, 201 (9th Cir. 1989). When the jurisdictional issue is completely intermeshed or intertwined with the merits of

the case, the district court "should employ the standard applicable to a motion for summary judgment and grant the motion to dismiss for lack of jurisdiction only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. [Unless this standard is met], the intertwined jurisdictional facts must be resolved at trial by the trier of fact." Rosales v. United States, 824 F.2d 799, 803 (9th Cir. 1987).

**B. Fed. R. Civ. Proc. 12(b)(6)**

In considering a motion to dismiss under Rule 12(b)(6), the court must accept as true the allegations of the complaint in question. Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976).  The court will construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  Absent unusual circumstances, dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by amendment. Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996).

When a defendant challenges the legal sufficiency of a complaint, the court's review is limited to the complaint. Cervantes v. City of San Diego, 5 F.3d 1273, 1274 (9th Cir. 1993).  As a general matter, a district court may not consider any material outside of the pleadings when ruling on a Rule 12(b)(6) motion. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  Material properly submitted as part of the complaint and materials the court may take judicial notice of may be considered. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  If the parties present the court with any other evidence and the court considers it, the court must converting the Rule 12(b)(6) motion into a motion for summary judgment. Fed. R. Civ. Pro. 12(b)(6); Anderson v. Angelone, 86 F.3d 932, 934-35 (9th Cir. 1996).

**III. Discussion**

**A. Eleventh Amendment Immunity**

Defendants assert that Eleventh Amendment immunity applies in this case against Defendants Negrete and Williams, depriving the court of subject matter jurisdiction.[2] "Plaintiffs sue defendants JERRY NEGRETE and STEVE WILLIAMS in their official state capacity as employees of the California Department of Corrections and Rehabilitation. Additionally, plaintiffs seek money damages. Plaintiffs' claims are therefore barred by the Eleventh Amendment." Doc. 27, Brief, at 9:6-10.

"Put simply, the eleventh amendment bars actions against state officers sued in their official capacities for past alleged misconduct involving a complainant's federally protected rights, where the nature of the relief sought is retroactive, i.e., money damages, rather than prospective, e.g., an injunction. A qualification to the general rule stated above is that an action will not be deemed to be against the state where the plaintiff seeks to impose personal liability on a state official sued in his individual capacity as a result of actions undertaken by that official which violated the plaintiff's federally protected rights." Bair v. Krug, 853 F.2d 672, 675 (9th Cir. 1988). While Plaintiffs do seek money damages in this case, they have sued Defendants in their individual capacities.

The U.S. Supreme Court has outlined the elements necessary for alleging a Section 1983 claim against an official in his or her individual capacity: the complaints "allege that the action was taken 'under color of state law' and that it deprived the decedents of their lives and rights without due process of law. Fairly read, the complaints allege that each of the named defendants, in undertaking such actions, acted either outside the scope of his respective office or, if within

---

[2] The Amended Complaint also names the CDC itself as a defendant. Doc. 16, Amended Complaint, at 1:26-28. Defendants have made no mention of the CDC itself in this motion. Under case law, the CDC is immune from suit under the Eleventh Amendment. Watkins v. California Dep't of Corrections, 100 F. Supp. 2d 1227, 1231 (S.D. Cal. 2000); see Hale v. Arizona, 993 F.2d 1387, 1399 (9th Cir. 1993) (Arizona Department of Corrections is an arm of the state and Eleventh Amendment immunity applies). As Defendants have not asserted immunity for the CDC, the court will not address the issue at this time.

the scope, acted in an arbitrary manner, grossly abusing the lawful powers of office....petitioners allege facts that demonstrate they are seeking to impose individual and personal liability on the named defendants for what they claim -- but have not yet established by proof -- was a deprivation of federal rights by these defendants under color of state law. Whatever the plaintiffs may or may not be able to establish as to the merits of their allegations, their claims, as stated in the complaints, given the favorable reading required by the Federal Rules of Civil Procedure, are not barred by the Eleventh Amendment." Scheuer v. Rhodes, 416 U.S. 232, 235 and 238 (1974) overruled on other grounds by 457 U.S. 800.  Put another way, "to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985).

In this case, Plaintiffs allege that

> Defendants Jerry Negrette and Steve Williams are individuals who, at all times material hereto were employees of defendant California Department of Corrections and in doing the things hereinafter alleged, were acting outside the scope and purpose of their employment and for their own personal motivations....On or about July 22, 2005, acting in their individual capacity and under color of the laws of the State of California, defendants Jerry Negrette and Steve Williams caused a letter to be written to each of plaintiffs advising plaintiffs that they were the subject of criminal investigations concerning plaintiffs' billing practices for the provision of health care services pursuant to plaintiffs' employment contracts with the provision of health care services pursuant to plaintiffs' employment contracts with CDC. The intention of these letters were to inflict emotional distress and injury to plaintiffs and to coerce and intimidate them into foregoing their vested and contractual right to be compensated for all health care services rendered by plaintiffs after normal business hours pursuant to their employment contracts with CDC.

Doc. 16, Amended Complaint, at 2:3-10.  These statements are sufficient to allege causes of action against Defendants in their individual capacities.  Eleventh Amendment immunity does not bar claims against Defendants.

**B. Constitutionally Protected Right**

Defendants argue that "Plaintiffs have failed to state a congnizable legal theory" under Section 1983. Doc. 27, Brief, at 4:23.  Defendants do not allege that the complaint alleges

6

insufficient facts.  As a threshold matter, Plaintiffs argue their claim arises under two theories[3]: deprivation of property rights without due process and property taken without just compensation[4]. Doc. 16, Amended Complaint, at 2:18-21.  Plaintiffs do not claim that their right to be free from "Law impairing the Obligation of Contracts" under Article I, Section 10 of the U.S. Constitution has been violated. Doc. 28, Opposition, at 3:18-22.  Defendants argue that the Amended Complaint fails to state a cognizable claim as "The existence of a state contract does not confer upon the contracting parties a constitutionally protected property interest" and "there is no constitutional right not to receive a letter advising plaintiffs that they were subject to criminal investigations concerning their billing practices." Doc. 27, Brief, at 4:24-28.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite." Board of Regents v. Roth, 408 U.S.

---

[3]Plaintiffs also drop in a footnote the statement that "The facts alleged also appear also [sic] to present a violation of protections against involuntary servitude secured by Amendment XIII to the United States Constitution." Doc. 28, Opposition, at 5:28 n.1.  Plaintiffs neither explain the issue nor provide any case law backing their contention.  Involuntary servitude is not one of the theories advanced in the Amended Complaint. As a general matter, "It is simply not sufficient for a party to mention a possible argument in the most skeletal way and leave for the court the task of putting flesh on its bones. Chao v. Port City Group, 2005 U.S. Dist. LEXIS 28691, *12 n.3 (W.D. Mich. 2005), citing McPherson v. Kelsey, 125 F.3d 989, 995-6 (6th Cir. 1997) and Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n, 59 F.3d 284, 293-4 (1st Cir. 1995).  Notwithstanding the fact that the issue is inadequately raised, the U.S. Supreme Court has stated that involuntary servitude is only found where "the victim had no available choice but to work or be subject to legal [criminal] sanction" or where there is physical coercion. United States v. Kozminski, 487 U.S. 931, 943 (1988).

[4]Plaintiffs have not alleged that they complied with any procedural requirement for stating a violation of these rights. Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 195 (1985) ("if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation").  As the requirements may or may not be subject to waiver and Defendants have made no objection or argument on this ground, the court will not address the issue.

564, 569-70 (1972). With respect to the issues in this case, "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims. Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents v. Roth, 408 U.S. 564, 577 (1972). "In order to state a claim under the Takings Clause, a plaintiff must first demonstrate that he possesses a 'property interest' that is constitutionally protected. Only if he does indeed possess such an interest will a reviewing court proceed to determine whether the expropriation of that interest constitutes a 'taking' within the meaning of the Fifth Amendment." Schneider v. California Dep't of Corrections, 151 F.3d 1194, 1198 (9th Cir. 1998). The relationship of what qualifies as "property" under the due process and takings clauses is problematic. The District of D.C. has specifically said that Roth and other due process cases "define property rights for the purpose of due process but have no applicability to takings doctrine." Hohri v. United States, 586 F. Supp. 769, 783 (D.D.C. 1984), citing Kizas v. Webster, 707 F.2d 524, 539 (D.C. Cir. 1983).

Yet, other courts have explicitly relied on Roth in explaining what constitutes property in takings cases. In Schneider, the Ninth Circuit said Roth stood for the proposition that "The States' power vis-a-vis property thus operates as a one-way ratchet of sorts: States may, under certain circumstances, confer 'new property' status on interests located outside the core of constitutionally protected property, but they may not encroach upon traditional 'old property' interests found within the core." Schneider v. California Dep't of Corrections, 151 F.3d 1194, 1200-1 (9th Cir. 1998). The District of Rhode Island stated, "in order to ascertain the nature and extent of the protected property interest at issue, this Court must look outside the Takings Clause

8

to 'rules or understandings that stem from an independent source,' such as common law and state law" <u>Young v. Wall</u>, 359 F. Supp. 2d 84, 89 (D.R.I. 2005), quoting <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972).  Yet, <u>Young</u> goes on to say that while there was no deprivation "of a constitutionally-protected property right in violation of the Fifth Amendment, this does not mean that the Defendant's actions were constitutional....even where the right deprived is a limited right defined by statute, which 'does not fall within traditional common-law concepts of property,' procedural due process is still required." <u>Young v. Wall</u>, 359 F. Supp. 2d 84, 93 (D.R.I. 2005), quoting <u>Goldberg v. Kelly</u>, 397 U.S. 254, 261-2 n.8 (1970).  The D.C. Circuit discussed due process and takings in the context of the Fifth Amendment and said there are "two independent clauses to address two independent issues. A claim of deprivation of property without due process of law cannot be blended as one and the same with the claim that property has been taken for public use without just compensation. A 'legitimate claim of entitlement' to a government benefit does not transform the benefit itself into a vested right. Rather, due process 'property interests' in public benefits are limited, as a general rule, by the governmental power to remove, through prescribed procedures, the underlying source of those benefits." <u>Kizas v. Webster</u>, 707 F.2d 524, 539 (D.C. Cir. 1983).  With these cases, the court finds that "property" under the due process clause is broader than "property" under the takings clause.  That is, any property that qualifies under the takings clause must also be property under the due process clause. Conversely, if a benefit is not considered property under the due process clause, it would not be property under the takings clause.  As what constitutes "property" is the central legal dispute between the parties, the court analyzes the issue from a due process perspective only.

      Plaintiffs' theories of the case are convoluted and they have provided several formulations of it.  The relevant allegations in the Amended Complaint are that:

> plaintiffs had a right, secured to them directly or by incorporation into Amendment XIV of the United States Constitution, not to be deprived of any property right without due process of law and not to have any property taken from them without just compensation. At all times material hereto, plaintiffs had a vested contractual right to be fully compensated for all health care services rendered in good faith to inmates of CDC and a further vested contractual right to provide such services to inmates of CDC at any hour of any day wherein those services were medically necessary. The letters written by Jerry Negrette and Steve Williams to plaintiffs were intended to and did deprive plaintiffs of their rights secured to them under the Constitution and Laws of the United States of

> America by dissuading them and deterring them from providing professional health care services to inmates of CDC after regular business hours, notwithstanding their determination that such services were medically necessary, and by continuing in their contract with the CDC and by dissuading them and deterring them from demanding compensation for all health care services rendered by them after regular business hours to inmates of CDC.

Doc. 16, Amended Complaint, at 2:18-3:5.

> [Defendants] argue that the mere existence of a state contract, in and of itself, does not create a property right. Plaintiffs do not quarrel with this. Plaintiffs complain, rather that they had a legitimate protected property right, under their contract with the State of California, that is: to be justly compensated at a higher rate for professional services rendered to the public use (the medical care of prisoners in the custody of the State of California) when those services are rendered after normal business hours. Plaintiffs complain that defendants acted under color of state law to deprive them of that right by intimidation and/or coercion in the form of a threat of criminal sanctions if they persisted in seeking compensation for the professional medical services they rendered after normal business hours and by threatening to impose criminal sanctions against them for having sought compensation for rendering those services in the past.

Doc. 28, Opposition, at 3:8-17.  "The rights claimed to be protected is the right to make a claim to be compensated for professional services rendered for public use. The gravamen of this action is not the failure of anyone to compensate plaintiffs for services rendered. The latter would be a contract action; the former is clearly a deprivation of a right secured by the United States Constitution. Defendants are not alleged to have provided an actionable breach of contract wherein plaintiffs lost the benefit of their contractual rights.  Rather, defendants are alleged to have attempted to coerce plaintiffs to provide services to the Department of Corrections and Rehabilitation and to forego their contractual right to be compensated for providing those services" Doc. 28, Opposition, at 4:15-24.

 Both sides cite to <u>Portman v. County of Santa Clara</u> as instructive in this case. See Doc. 28, Opposition, at 4:6-14; Doc. 29, Reply, at 2:23-3:12.

> Deprivation of a benefit to which one is entitled under a statute or a contract does not automatically give rise to a property interest protected by the Due Process Clause. It is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state into a federal claim. The Fourteenth Amendment was not intended to shift the whole of the public law of the states into the federal courts. Thus, although the determination of what is property is made by reference to state law, a court must look to federal constitutional law to determine whether the interest is of the kind protected by the Fourteenth Amendment.
>
> The Ninth Circuit has never considered the precise question of whether accrued sick leave or medical insurance benefits are the type of property protected by the Fourteenth

>Amendment. Other circuits, however, have considered analogous questions. The Sixth Circuit in <u>Ramsey v. Board of Education</u>, 844 F.2d 1268, 1272 (6th Cir. 1988), for example, held that an interference with a property interest in a pure benefit of employment there, accumulated sick leave, as opposed to an interest in the tenured nature of employment itself, is an interest that can be and should be redressed by a state breach of contract action and not a federal action under section 1983. The court reasoned that the Due Process Clause protects a property interest in continuing employment because the tenured employee who loses his or her position by a premature breach of contract has suffered the loss of a property interest that, because of its special nature, is neither easily defined nor easily compensated by a typical breach of contract action. In contrast, an employee deprived of a property interest in a specific benefit, term or condition of employment, suffers a loss which is defined easily. Thus, the court concluded, entitlement to accumulated sick leave, although a property interest, is not constitutionally protected.

<u>Portman v. County of Santa Clara</u>, 995 F.2d 898, 905-6 (9th Cir. 1993), quotations omitted.

>While all public contracts bestow various legal rights on the contracting entity under state law, not all public contracts necessarily invoke the protection of the Due Process Clause. Thus, our problem, then, is to distinguish between 'mere' contract rights and constitutionally protected property rights created by contract.
>
>In <u>Unger</u> [v. National Residents Matching Program, 928 F.2d 1392 (3rd Cir. 1991)], the Third Circuit identified two general types of public contract rights that give rise to property interests protected under the Due Process Clauses of the Fifth and Fourteenth Amendments. The first type arises where the contract confers a protected status due to extreme dependence, as is the case with welfare benefits, or permanence, as is the case with tenure, or sometimes both, as frequently occurs in the case of social security benefits. The second type arises where the contract itself contains a provision that the governmental entity can terminate the contract only for cause.

<u>DeBoer v. Pennington</u>, 206 F.3d 857, 869 (9th Cir. 2000) quotations omitted, vacated and remanded on other grounds at 532 U.S. 992, reinstated at 287 F.3d 748.

Plaintiffs assert they lost certain contract benefits due to Defendants' actions. These allegedly denied benefits are payment for medical services rendered after normal business hours. These contract benefits do not fall under the definition of "property" under the due process case law. What was allegedly lost was more akin to a readily defined paycheck rather than an open ended commitment like tenure. Though it is still unclear, Plaintiffs appear to make a distinction between outright denial of contract benefits and pressure upon Plaintiffs not to assert their contract rights to those benefits. In effect, they argue that the latter gives rise to a Section 1983 claim even when the former does not. Plaintiffs have provided no case law that discusses such a distinction nor have they explained why the difference is legally significant. The practical effect of the two situations is the same: contract benefits are denied. The court finds the distinction between the two situations to be legally irrelevant in determining whether Plaintiffs'

constitutional rights regarding property have been violated. There is no Section 1983 cause of action unless the underlying contract benefit gives rise to a property right that is protected by either the due process or takings clauses. The benefits Plaintiffs allege Defendants have deprived them of do not qualify.

Plaintiffs have already amended their complaint once before. The facts in this case are clear and straightforward. Plaintiffs have no viable legal theory upon which to proceed based on these facts. Under the circumstances, amendment would be futile.

## IV. Order

Defendants' motion to dismiss for failure to state a claim is GRANTED WITH PREJUDICE.

IT IS SO ORDERED.

Dated:     **January 29, 2007**              **/s/ Anthony W. Ishii**
0m8i78                                        UNITED STATES DISTRICT JUDGE